# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANN CUMMINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV00520 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Ann Cummings, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disabled Widow's Benefits ("DWB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 10, 14). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff initially applied for SSI, and then added a claim for DWB following the death of her husband in March 2011. (Tr. 12,

28-38, 66-67.)[1] Upon denial of those applications initially (Tr. 66-83, 108-19) and on reconsideration (Tr. 84-105, 120-29, 133-40), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 130-32). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 39-65.) The ALJ then ruled Plaintiff not disabled within the meaning of the Act. (Tr. 9-21.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's ruling the Commissioner's final decision for purposes of judicial review. (Tr. 1-5.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. It was previously found that [Plaintiff] is the unmarried widow of the deceased insured worker and has attained the age of 50. [Plaintiff] met the non-disability requirements for [DWB] . . . .
>
> 2. The prescribed period ends on May 31, 2017.
>
> 3. [Plaintiff] has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date.
>
> 4. [Plaintiff] has the following severe impairments: Chronic Obstructive Pulmonary Disease (COPD); Asthma; and[] Hypertension.

---

[1] "For [DWB], in addition to showing disability, a claimant must show that she is a widow who has attained the age of fifty and is unmarried (unless one of the exceptions in 20 C.F.R. § 404.335(e) [] appl[ies]) and that her disability began before the end of the prescribed period." Fraley v. Astrue, No. 2:10-cv-00762, 2011 WL 2681647, at *2 (S.D.W. Va. July 11, 2011) (unpublished) (citing 42 U.S.C. § 402(e); 20 C.F.R. § 404.335). "The definition of disability for [DWB] is the same as for the standard disability case and the five-step sequential evaluation process is applicable to [DWB] cases." Lavender v. Colvin, No. 1:10CV903, 2014 WL 237980, at *2 & n.4 (M.D.N.C. Jan. 22, 2014) (unpublished) (citing 20 C.F.R. §§ 404.1505(a), 404.1520(a)(2)).

. . .

5. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

6. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except for the need to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.

7. [Plaintiff] has no past relevant work.

. . .

11. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

12. [Plaintiff] has not been under a disability, as defined in the . . . [Act], from January 1, 2011, through the date of this decision.

(Tr. 14-20 (internal citations omitted).)[2]

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v.

---

[2] "The prescribed period [for DWB] ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later." Fraley, 2011 WL 2681647, at *2 (citing 42 U.S.C. § 402(e)(4); 20 C.F.R. § 404.335(c)(1)). In this case, Plaintiff's prescribed period began on March 8, 2011, the date her husband died (see Tr. 12) and, thus, Plaintiff had to establish that her disability began on or before May 31, 2017, the last day of the month before the month in which Plaintiff will attain age 60, in order to be entitled to DWB.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). In this case, Plaintiff has not shown entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

4

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration has . . .

5

detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ "fail[ed] to properly account" in the RFC for consultative examiner Dr. Adam Cohen's opinion "that [Plaintiff] ha[d] moderately reduced stamina" (Docket Entry 12 at 4); and

(2) the ALJ improperly evaluated Plaintiff's credibility (see id. at 9-15).

Defendant contends otherwise, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 15 at 3-16.)

### 1. Consultative Examiner's Opinion

In Plaintiff's first issue on review, she alleges that "[t]he ALJ erred by failing to properly account" in the RFC for Dr. Cohen's opinion "that [Plaintiff] ha[d] moderately reduced stamina." (Docket Entry 12 at 4 (citing Tr. 361).) In that regard, Plaintiff notes that the ALJ gave Dr. Cohen's opinions

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

"significant weight" (id. (citing Tr. 19), and argues that, "[i]f an ALJ accepts a medical opinion, s/he must include the established limitations in the RFC [or] explain why [they were] excluded" (id. at 5 (citing Hines, 453 F.3d at 566, and Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995)). According to Plaintiff, her reduced stamina prevents her from performing medium work, which "requires the ability to lift up to 50 pounds, stand/walk at least six hours per day (a 'critical' component of medium work), and usually requires frequent bending and stooping." (Id. at 4 (citing 20 C.F.R. § 404.1567, and Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – The Medical Vocational Rules of Appendix 2, 1983 WL 31251, at *6 (1983)).) Plaintiff additionally faults the ALJ for incorrectly stating that Dr. Cohen found only "mild" reduction in Plaintiff's stamina (id. at 8 (citing Tr. 19)), and "notes that the ALJ could have re-contacted [Dr. Cohen] for clarification" of his opinions (id. at 9 (citing 20 C.F.R. § 404.1519p(b))). Plaintiff maintains that the ALJ's error prejudiced her, because had the ALJ limited her to light work, Rule 202.04 of the Medical-Vocational Guidelines would have directed a conclusion of "disabled." (Id. at 15-16 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 202.04).) Plaintiff's contentions fail to warrant relief.

9

Plaintiff places undue emphasis on Dr. Cohen's statement that Plaintiff's lung impairments moderately reduced her stamina. (See Tr. 361.) Placing that statement in the larger context of Dr. Cohen's entire evaluation makes clear that his findings provide substantial evidence to support the ALJ's medium-exertion RFC. Although Dr. Cohen did find Plaintiff's stamina moderately reduced (see id.), he ultimately concluded, as the ALJ recognized (see Tr. 19), that Plaintiff had no impairment in her ability to sit, stand, move about, or handle objects and that she had only mild impairment in her ability to lift and carry (see Tr. 361). Moreover, Dr. Cohen's objective findings provide further support for the ALJ's conclusion that Plaintiff could perform the lifting, standing, and walking required by medium work. Dr. Cohen found full range of motion in Plaintiff's spine, shoulders, elbows, wrists, hands, hips, knees, ankles, feet, and great toes (see Tr. 355), and assessed 5/5 strength in Plaintiff's muscles (see Tr. 361). He further noted that Plaintiff had a "steady gait" and could raise her arms overhead and squat. (Id.) Although pulmonary function tests revealed "moderate obstruction" (Tr. 357), the test administrator noted Plaintiff provided only "fair" effort (Tr. 356). Thus, Dr. Cohen's ultimate conclusions harmonize with the

10

ALJ's finding that Plaintiff remained capable of performing a range of medium-exertion work.[6]

Plaintiff "concedes" that Dr. Cohen's limitations "[we]re somewhat vague," but "notes that the ALJ could have re-contacted [Dr. Cohen] for clarification" of his opinions. (Docket Entry 12 at 9 (citing 20 C.F.R. § 404.1519p(b)).) As an initial matter, although Plaintiff apparently found Dr. Cohen's limitations "somewhat vague" (see id.), the ALJ made no such finding (see Tr. 19). Moreover, the relevant regulation makes clear that the ALJ's duty to re-contact a consultative examiner arises only when the examiner's report "is inadequate or incomplete." 20 C.F.R. §§ 404.1519p(b), 416.919p(b). Here, Dr. Cohen's report does not qualify as either "inadequate" or "incomplete": he documented Plaintiff's medical history and her subjective complaints (see Tr. 360-61), performed exhaustive range of motion testing (see Tr. 355), administered pulmonary function tests (see Tr. 356-59), generated a full set of objective findings regarding Plaintiff's strength and neurological functioning (see Tr. 361), and offered opinions regarding limitations on Plaintiff's abilities to do work-

---

[6] As Dr. Cohen's ultimate conclusions about Plaintiff's abilities to perform work-related activities provide substantial evidence to support the ALJ's RFC determination, the ALJ's apparent error in describing Dr. Cohen's stamina limitation as "mild" (Tr. 19) rather than "moderate" (Tr. 361) constitutes harmless error. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

11

related activities (see id.). Under these circumstances, the ALJ did not have a duty to re-contact Dr. Cohen.

In short, Plaintiff's first assignment of error fails.

## 2. **Plaintiff's Credibility**

Plaintiff next contends that "[t]he ALJ's decision contains practically no discussion of [Plaintiff's] credibility as required [by] 20 C.F.R. § 404.1529 and Fourth Circuit precedent beyond a boilerplate paragraph and a one sentence explanation." (Docket Entry 12 at 9.) According to Plaintiff, the ALJ's credibility analysis fails to comport with the regulatory requirements in three respects: (1) the ALJ detailed Plaintiff's testimony regarding daily activities and the objective medical evidence, but failed to identify any inconsistencies that would diminish her credibility (id. at 11-13); (2) the ALJ failed to acknowledge a Report of Contact reflecting a telephone interview with Plaintiff's daughter, Danielle Owens (id. at 12 (citing Tr. 349)); and (3) "the ALJ justified her adverse credibility finding" (id. at 13) on Plaintiff's lack of treatment but did not question Plaintiff about her ability to afford such treatment (id. at 13-15). These arguments fall short.

Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements ("SSR 96-7p"), 1996 WL 374186 (July 2, 1996), as applied by the Fourth

12

Circuit in <u>Craig</u>, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Id.</u> at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which they affect his or her ability to work. <u>Id.</u> at 595. In making that determination, the ALJ:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

<u>Id.</u> (internal citations and quotation marks omitted).

In this case, the ALJ found for Plaintiff on part one of the inquiry, but ruled, in connection with part two, that her statements about the degree of her symptoms lacked credibility in so far as she claimed a level of physical impairment that would prevent her from performing a range of medium work. (Tr. 17.) In

13

making that part two finding, the ALJ discussed the medical treatment and objective findings relevant to Plaintiff's pulmonary impairments. (Tr. 18-19.) Further, the ALJ discussed Plaintiff's testimony about her pulmonary symptoms, medications, and other treatment, which included an extensive discussion of Plaintiff's reported daily activities:

> [Plaintiff] described her typical day to include washing clothes, vacuuming and cooking while taking breaks and sitting down to catch her breath. She said she cooks once a day with breaks every 15 minutes . . . .
>
> [Plaintiff] described her typical day to include getting up and getting on the [nebulizer] machine around 7:30, although she said she sometimes skips the inhalers if she is having a good day. She said it takes about 45 minutes to get up and around and that showers can help. She said she did not need help with her personal needs and would spend time after breakfast tidying up around the house the rest of the day and then tak[e] about an an hour to prepare dinner before watching television or reading a book. She washes dishes before retiring around 10:30. She said she is able to grocery shop for about an hour without using a motorized cart. She gets out visiting family or friends once or twice a week . . . .

(Tr. 16-17.)

Plaintiff correctly argues that the ALJ did not include language in the credibility analysis reflecting that Plaintiff's ability to perform these various daily activities diminished her credibility with regard to her allegations of disabling symptoms. (See Docket Entry 12 at 12; Tr. 17-19.) Nevertheless, even in the absence of such language, the ALJ's thorough discussion of Plaintiff's testimony regarding daily activities provides a

14

sufficient "logical bridge," Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), from those activities to the ALJ's finding that Plaintiff lacked full credibility with regard to her claim of disabling symptoms. See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (holding that, "[a]lthough specific articulation of credibility findings is preferable, . . . the lack thereof . . . constitute[s] a deficiency in opinion-writing that does not require reversal" as long as the ALJ's "ultimate finding is supported by substantial evidence in the record").

Plaintiff also faults the ALJ for failing to acknowledge the Report of Contact with Ms. Owens. (Docket Entry 12 at 12 (citing Tr. 349).) Plaintiff asserts (1) that Ms. Owens' statements, including that Plaintiff used a nebulizer every six hours and an inhaler as needed, became short of breath when walking, and coughed "quite a bit" (Tr. 349), confirmed Plaintiff's testimony and Dr. Cohen's opinions, as well as (2) that 20 C.F.R. § 404.1529(c) "absolutely requires" an ALJ to consider statements from lay witnesses (Docket Entry 12 at 12).

Here, the ALJ failed to discuss either the Report of Contact with Ms. Owens or the Third Party Function Report submitted by Ms. Owens. (See Tr. 14-20; see also Tr. 228-35, 349.) However, such an omission by the ALJ constitutes harmless error, where, as here, Ms. Owens' statements "do[] not materially contradict" the evidence supporting the ALJ's RFC determination, Morgan v. Barnhart, 142 F.

15

App'x 716, 723 (4th Cir. 2005), and "do[] little more than corroborate [Plaintiff's] own testimony," Blackwell v. Colvin, No. 1:14-cv-00085-MOC, 2014 WL 7339132, at *7 (W.D.N.C. Dec. 23, 2014) (unpublished) (citing Orcutt v. Barnhart, No. ED CV 04-889 PLA, 2005 WL 2387702, at *8-9 (C.D. Cal. Sept. 27, 2005) (unpublished)). See also Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996) (finding ALJ's failure to specifically discuss lay testimony harmless where such testimony "did not constitute a separate 'line of evidence,'" but rather "served strictly to reiterate, and thereby corroborate, [the plaintiff's] own testimony concerning his activities and limitations"); Young, 221 F.3d at 1068 (ruling that "the ALJ's failure to give specific reasons for disregarding [lay] testimony [was] inconsequential" because the same evidence the ALJ used to discount the plaintiff's testimony "also support[ed] discounting the [lay] testimony").[7]

Finally, Plaintiff complains that the ALJ discredited Plaintiff for a lack of medical treatment, but then failed to ask follow-up questions regarding Plaintiff's ability to afford such treatment and the capacity of that treatment to restore Plaintiff's

---

[7] In fact, Ms. Owens' Third Party Function Report arguably provides further support for the ALJ's RFC determination, as it reflects that Plaintiff performed the additional, significant activity of caring for her grandchildren on a daily basis. (See Tr. 229, 232.)

16

ability to work. (See Docket Entry 12 at 13-14 (citing 20 C.F.R. § 404.1530, and Tr. 19, 60).)[8]

Long-standing Fourth Circuit precedent dictates that a claimant's lack of medical treatment due to inadequate funds "cannot justify an inference that her condition was not as severe as she alleges." Mickles v. Shalala, 29 F.3d 918, 929-30 (4th Cir. 1994) (citing Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986)); SSR 96-7p, 1996 WL 374186, at *8 (providing that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other [relevant] information in the case record"). However, Plaintiff bore the burden of demonstrating her inability to afford treatment with credible evidence. Hawley v. Colvin, No. 5:12-CV-260-FL, 2013 WL 6184954, at *6 (E.D.N.C. Nov. 25, 2013) (unpublished).

Here, although Plaintiff testified that she did not seek treatment between May 2011 and the February 2013 hearing before the ALJ due to a lack of "funds to go back and forth to the doctor" (Tr. 60), the ALJ did not find Plaintiff "entirely credible" (Tr. 19), and Plaintiff did not offer any further evidence regarding her

---

[8] Plaintiff's citation to 20 C.F.R. § 1530 misses the mark. That section governs the conditions under which an ALJ may excuse a claimant's failure to follow prescribed treatment, and does not discuss how an ALJ should handle a lack of treatment due to inability to pay. See id.

17

inability to afford treatment, or what attempts, if any, she made to obtain treatment at free or low-costs clinics (see Tr. 44-61). Under these circumstances, the ALJ did not err in discounting Plaintiff's credibility due to lack of treatment.

As detailed above, the ALJ's missteps in the crediblity analysis individually constituted harmless errors; considering these matters cumulatively, they remain harmless.  In order to successfully challenge the ALJ's analysis of Plaintiff's subjective complaints, Plaintiff must show how a proper credibility analysis would have resulted in additional functional limitations in the RFC and how that RFC would impact the ALJ's ultimate conclusion regarding Plaintiff's ability to perform the jobs cited by the VE. See McAnally v. Astrue, 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate that . . . the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC [assessment] or discuss any evidence that would support the inclusion of any limitation."); Miles v. Astrue, No. 8:07-3164-RBH, 2009 WL 890651, at *14 (D.S.C. Mar. 30, 2009) (unpublished) ("[T]he plaintiff details various pieces of evidence which she contends the ALJ misconstrued. . . . The plaintiff, however, has not explained how such evidence, if fully considered, would have proven additional limitations sufficient to eliminate the possibility that [the] plaintiff could perform the sedentary work required of her past

18

relevant work. Accordingly, error, if any, in either failing to consider such evidence or in misconstruing it, would be harmless."). Here, although Plaintiff conclusorily states that, "[h]ad the ALJ properly accounted for [Plaintiff's] exertional limitations related to asthma and COPD and limited her to . . . light work," the Medical-Vocational Guidelines would "incontrovertibly direct a finding that she is 'disabled'" (Docket Entry 12 at 15-16), Plaintiff points to no specific testimony the ALJ should have credited that compels a finding that she could perform no more than light work (see id.). In other words, Plaintiff has made no effort to show how a proper credibility analysis would have impacted the RFC and the jobs she could perform as a result of that RFC.

In sum, the ALJ's credibility analysis does not contain prejudicial error.

### III. **CONCLUSION**

Plaintiff has established no grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgement Reversing or Modifying the Decision of the Commissioner (Docket Entry 10) be denied, that Defendant's Motion for Judgment

19

on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld<br>**L. Patrick Auld**<br>**United States Magistrate Judge**

February 19, 2016